v. Hanover Insurance Group, Inc., and others, arguments not to exceed 15 minutes per side. Mr. Gottesdiener, for the appellants. Good morning, Your Honors. Good morning. I represent Appellants Wharton and Tedesco.  All right. I would like to, if I might, focus my remarks on the statute of limitations question, and more particularly whether these gentlemen really should be deemed time barred from bringing the specific claim alleged in the amended complaint in 2009 that defendant's 2004 amendment violated ERISA's cutback clause. We think the answer is definitely no, and this case is a classic instance where the court should apply American pipe class action tolling. However, we think it may be easier if the court analyzes it under Rule 15, relation back principles, because the facts are so clear in that regard. The test— Why do we need relation back when there were new, you know, these are new allegations under the proposed amended complaints? Well, after the affirmative defenses were asserted with regard to the district court's ruling— Well, the test in Bledsoe that this court declared is a functional one, and it asks what's fair and whether there's a lack of notice, whether there's surprise. The test is, quote, whether the party asserting the statute of limitations defense had been placed on notice that he could be called to answer for the allegations in the amended pleading. Now, the allegations in the amended pleading were that this 2004 amendment specifically violated and was void, a nullity, ERISA's anti-cutback provision. But for three reasons, defendants were not surprised at all when we amended. Your Honor. Yeah. One of the things that I was going to ask, and this may also go to Judge Clay's question, is if you could explain to us how they are related, because the gravelman of your claim is that both of them are essentially related, which would be essential under both 15C and under American pipe totem. So tell us how they are related, because it's not clear at first blush that they are. They are really one and the same claim. Okay. Tell us how. The claim is, and to even back up even more basically, in hindsight, boy, are we sorry that we ever amended, because think of where the case would be if we never amended the 2007 complaint. The 2007 complaint that Ms. Duran brought said this indexing rate was a promised part of the accrued benefit for all contributions that went into the account. The whipsaw claim. Well, we didn't use the word whipsaw. What we said was there's a promise that all contributions that are made to the account, people worked to earn the indexing rate as well as the contributions, and there's no dispute from the defense that the right to future indexing in a cash balance plan is part of the accrued benefit. Okay. But that's the whipsaw claim, right? Well, yes. That was the first claim. The first claim was the whipsaw claim. Well, Your Honor, yes and no, because the 2007 complaint we would contend contains necessarily, it contains the allegation under Rule 8 that all you would need for the case to continue. And here's why. Because it says three things. There's this promise of future indexing for all contributions that go into the account through age 65. The defendants reneged on the promise. There's no question, Your Honor, that in Mr. Rand's specific case, they reneged on the promise from the point of termination to age 65. But we also specifically included in the class allegations all participants, including Mr. Wharton and Mr. Tedesco. That's not disputed. The class allegations cover everybody who accrued a benefit under the plan. And it doesn't matter. ERISA doesn't recognize the distinction the defendants make. It's hard to keep this clear, but they say it's a horse of a different color, but ERISA says it's two sides of the same coin and here's why. Because the account West v. A.K. Steele holds is not the benefit. The benefit under a defined benefit pension plan is not the account, but it is the account projected or indexed forward through age 65 with the interest credits that prevailed at the time the person gave their labor in exchange for those pension contributions. So when the pension contribution goes into the account, that indexing rate that applies under the terms of the plan at that time is locked in. I'm challenging under both. You're challenging the calculation methodologies. Yes, exactly, and that is why we never needed to amend and we shouldn't have amended and we regret amending because the case would now be over. We would have finished the litigation. Because why? Because they responded by raising for the folks that I'm representing here. Did the methodologies arise from different occurrences or different bases? Did all of the methodologies arise from the same thing? They do arise from the same illegal practice of substituting the 30-year treasury rate for the promised indexing rate at the mutual fund menu rate. There's no question, Your Honor, that something changed in 2004. What happened was their behavior got worse. There are three relation-back reasons to try to get back and finish answering Judge Clay's question. Relation-back applies because relation-back asks, were they surprised? There's no way they were surprised. Three reasons. In 2007, when we filed the amended complaint and included Wharton and Tedesco, how did they respond? By attaching the 2004 amendment, claiming that it was relevant to the complaint and why Ms. Duran should be tossed out of court and compelled to go exhaust her administrative remedies. So they knew the 2004 complaint in 2007 already was at play. But the second and killer reason that they have no response to under Bledsoe is when the district court, the judge who was then presiding, the judge who presided over this action was the magistrate judge, but the district court threw Ms. Duran out and we had to come to you, to the Sixth Circuit in 2007, 2008, and 2009, and Duran won, which we won. And when we were in required mediation, Your Honor, we wrote them a letter. It's in the record. They don't dispute they got it. It specifically says there's no way we'd like to try to settle the case, and we were copying the circuit mediator, but we can't resolve it because unless you also recognize that the 2004 amendment, which is fine for future service, future contributions, Wharton and Tedesco aren't asking for later than 2004 contributions to their account to be indexed at the higher rate, just pre-2004. We said in the letter to them that's part of the case. We specifically cited ERISA 204G. We specifically said that was an illegal cutback, and in fact, seven years ago when I was standing right here before a different panel, I actually even said in my argument in 2008, putting them again on notice, that the amendment just made things worse. You're right. There's a different action that was taken in 2004, but it was the same course of conduct. It was the same practice of swapping out a lower rate when people had given their labor in response to a promise of we're going to make contributions and we're going to index them out through age 65 at this investment crediting rate. The third reason, independent facts, why we know this has to relate back, is they then answered, after this court remanded in early 2009, the 2007 complaint. And when they responded to the 2007 complaint, which again, I'm really sorry we ever amended because we didn't need to. There'd be no claim of statute of limitations bar if we hadn't amended. They said, the claims of the class members plaintiff purports to represent who received distributions after December 31, 2003, which perfectly describes Wharton and Tedesco, the claims of those people are barred due to an amendment to the plan, and so forth and so on, the amendment to the plan 2004. So in 2007, they attach the 2004 amendment. They know it's in play. In 2008, we specifically say we can't settle the case unless you take into account the fact that you cut back people's benefits. The class included, everybody included, people who took their distributions after 2004. And then in 2009, they respond to our complaint, the 2007 complaint, not the amended December 2009 complaint, by raising this defense. Why? Because they knew that there was no logic for us to include Wharton and Tedesco in the original 2007 class unless what? Unless our position was that amendment was a nullity. It's void. You can't take somebody's accrued benefit away. We were not required to anticipate that amendment in the 2007 complaint. He'll stand up and he'll say, well, it wasn't specifically mentioned in the 2007 complaint. We didn't have to anticipate that defense, and we don't recognize that amendment as anything other than void ab initio. The practice that the 2007 complaint challenges is the practice of swapping out the lower rate for the higher rate. The accrued benefit, as Judge Marbley said, that is what we're attacking. In the original 2007 complaint, we keep saying you miscalculated the accrued benefit. So the claim is already there by saying the rate was promised, they reneged on the rate, and Wharton and Tedesco were injured. So we didn't need to amend. The magistrate judge made the mistake of accepting defendants' reading of the Asher case, which is just flat wrong. The Asher case says relation back doesn't apply when it's a new party. But my clients weren't new parties under American pipe. They're specifically parties under Supreme Court precedent. Everybody who is in the alleged class is deemed to have commenced their action at the time the original class complaint is filed until a class is either decertified or denied. So my clients' claims, the limitations period was suspended when Durand made the allegation that they are in the class, the promise was earned, accrued, part of the accrued benefit. If we decide that you counsel for your clients or your clients had enough information to have included your claims all along and therefore there shouldn't be a need to invoke American pipe tolling, the claims were known or should have been known and clear and should have been included in the litigation all along, and there's no reason or justification for invoking this American pipe tolling, then you would essentially lose, would you not, on this statute of limitations? No, I'm sorry, Your Honor, we would not lose. If American pipe tolling doesn't apply, we still win on relation back because the test for relation back is the functional one of whether they were surprised. They could not have been surprised by... Well, under the theory I just stated, you would not have been surprised, or you should not have, because you should have ascertained these claims and there was enough information available for the claims to have been identified and asserted years ago prior to the expiration of the statute of limitations, which I believe would... Five years. ...would have occurred in 2009 since the amendment was in 2004. I follow you. And then you would be barred, you wouldn't have the ability to come in here now and assert these claims. I don't think so, Your Honor. If I follow what Your Honor is saying, I'm at fault, me personally, for not, when I read Rule 8 and I filed the original complaint on behalf of everybody, including Wharton and Tedesco, I didn't see the need to mention the 2004 amendment and complicate, it's a simple 10-page complaint. The surprise... But the claims that you're bringing in are not peripheral or unknown and should have been able to have been included all along. Well, respectfully, I'm not sure I understand the prejudice, there's no prejudice to the defense because in 2007 they responded with the amendment, in 2008 we told them the amendment was being attacked in the current 2007 complaint, and in 2009 they responded to the 2007 complaint with the amendment, so they knew it was at play. The fault is mine, Your Honor, but that would be a Rule 8 question. I don't think I was in violation of Rule 8 because of the reasons that I explained to Judge Marbley. The complaint is sufficient. We never needed to amend. We shouldn't have amended because the promise is one element, the reneging on the promise is the second, that's all encompassed in the complaint, and what's the last? That my clients are injured. They're within the group of people who were injured. It's the substitution practice that we allege. It's my fault if I didn't specify the 2004 amendment, but that shouldn't prejudice my clients respectfully. Well, let's hear what your opposing counsel has to say about that. Thank you. Good morning, Your Honors. May it please the Court, Allen Gilbert on behalf of the Defendant's Appellee. Your Honors, this case is controlled by this Court's decision in Weston v. AmeriBank. That case holds that unnamed class members in a class complaint cannot benefit from American pipe tolling for claims not asserted and that couldn't be asserted by the named plaintiff. That's what we have here. We have a very broad class, as counsel mentioned. It includes everybody who was in the plan who had a vested benefit. It was not limited by what was in the complaint. The complaint itself was extremely limited. It was a single claim. Contrary to what counsel said or suggested in response to one of the questions, Your Honors, there was no broad challenge in that complaint to calculation methodology. If there had been some kind of a broad challenge, we might have a different case here. It was a very singular whipsaw. It was a whipsaw challenge. Only a whipsaw challenge. That was all that was in that complaint. Let me ask you this. This is what I'm trying to get my hands around. A whipsaw challenge still challenges the calculation methodology. How much do I get or how much am I entitled to get? Is that right? Only for those people who take a pre-retirement lump sum distribution. Right. Yes. And a cutback challenge also challenges how much I get, but a slightly different class of people, right? A different class of people in a different way. A cutback challenge challenges only an amendment. And it says that an amendment was a cutback. It's actually a different provision of ERISA, 204, rather than 203. It's a different group of people. The lump sum distribution claim, the whipsaw claim, only affects those people who take whipsaws. In fact, it ended as of 2006 because Congress passed the Pension Protection Act. Anybody who took a lump sum distribution after, I believe it's August 17th if I have my date right, 2006, has no whipsaw claim at all. So Mr. Tedesco never had a whipsaw claim because in 2007 when this case was filed, he hadn't taken any kind of a lump sum. In 2009, he hadn't. So he was never in this class in the first place other than the very broad asserted class. But for American pipe tolling, there are two things you need. You need to have a claim that was asserted by the named plaintiff. And this court in Weston, in a binding authority here, says that unnamed class members can't raise claims that the plaintiff didn't bring or couldn't have brought. In that case, in fact, it was the same situation. It was a challenge to a improper, it was a loan situation. Somebody said there was some kind of improper fee, a document fee. And there was a class action where the named plaintiffs had a broad class of everybody who was affected by the document fee. And they brought some state claims. And then the case got dismissed and somebody else, one of the unnamed class members, came in and tried to bring a federal truth in lending claim. The named plaintiff hadn't brought the federal truth in lending claim because for that plaintiff, that claim was time barred. He couldn't have brought it. But the unnamed plaintiffs could have brought it. And they were in that case as unnamed plaintiffs. They were in the asserted class, just like Wharton and Tedesco here. And this court held that that's not enough. And that's absolutely consistent with American pipe and Crown Cork. Crown Cork is really the basis for Weston. Absolutely. In many respects. And when you look at Crown Cork, you have to determine whether it's a different or peripheral claim. Those are the buzz words. So the question becomes whether a cutback claim is a different or peripheral claim. Based on your explanation, it certainly would be. But if you put it in a broader context, it's a methodology issue about calculating benefits. Well, to its logical conclusion, that means that a plaintiff in a class action can do what the plaintiff did here, bring a class action on behalf of everybody in a pension plan, have that claim, only one very specific narrow claim, and then years later, without any statute of limitation applying, raise some other benefit methodology claim. The cases don't allow that. American pipe tolling is actually narrower than 15C. And that's made clear from Crown Cork. And the language of Crown Cork applies right here. This is Justice Paul's concurrence, which has been cited by this court and lots of courts, say that it is important to make certain, however, that American pipe is not abused by the assertion of claims that differ from those raised in the original class suit. Claims as to which the defendant was not fairly placed on notice by the class suit are not protected under American pipe and are barred by the statute of limitations. And the key term here is fairly placed on notice. There was no fair placement on notice here. Look at that complaint. There's nothing in there about some kind of an interest rate substitution claim like the counsel talks about now. All the things that counsel has come up with in creative lawyering to suggest similarities between the two complaints were not in that original complaint. And that's what we have to look at. We have to look at what did that complaint do to put two groups of people on notice, one, the defendants, to let the defendants know what they have to defend against, what evidence they have to maintain, what their exposure is going to be. These complaints challenge different provisions of the plan policy. Absolutely. Different provisions of the plan, different provisions of ERISA are involved. The other thing that under American pipe tolling that's important is that the initial complaint is putting the other unnamed class members on notice of what claims are covered by this class action. And if that claim that they might want to bring isn't covered, they better protect themselves and bring another action. Here, there's nothing in that complaint about the 2004 amendment, which occurred three years before that 2007 complaint was filed. And the plaintiff couldn't have brought it because she left the plan in 2003. She was not somebody who was affected by that amendment in 2007. The other thing that's different about them is there's a difference between a projection rate, which is what the challenge is in a whipsaw claim, which is trying to estimate what interest crediting would be into the future to age 65, and the actual interest crediting on the account balance itself. Ms. Durand took her account balance, didn't challenge her account balance at all, didn't challenge the interest crediting on her account balance, took that account balance and said, you improperly estimated the future. We understand that claim is still here. It's still before the district court. The cutback claim says, well, the account balances after 2004 were improperly calculated and that the interest crediting rate had changed in a way that cut back. It's a completely different claim, different occurrence, different transaction. And to suggest that they are related just because at some level counsel can come up with a similar legal argument with regard to both is not enough. That's not what the cases say in American Pipe. The thing that's really telling here is what the plaintiffs themselves said. In 2007, in the initial motion to dismiss in this case, we raised this fact that the 2004 amendment was limiting any whipsaw claim for people who got their lump sum distributions after 2004. Because at that point, if the 2004 amendment is accepted as plaintiff has acknowledged, anybody who got a whipsaw, excuse me, got a lump sum distribution between 2004 and August of 2006 when the Pension Protection Act went into effect has no whipsaw claim because the interest crediting rate was the same as the discount rate that was used at that time. We raised that in connection with the motion to dismiss in this case before the first appeal. The plaintiffs responded in their brief in a pleading with the court. This is the words of the plaintiff. The December 2003 amendment is clearly outside the ambit of the complaint. So to the extent that they are relying on bledsoe, bledsoe is completely inapplicable here, but to the extent any extrinsic evidence is going to apply here, the extrinsic evidence points the other way. What they were telling us was that 2003 amendment isn't in this complaint. They have never said, in fact, none of the evidence, the so-called extrinsic evidence they present, says one word about we're going to challenge that amendment. Certainly we raised this as an affirmative defense, but we raised it as an affirmative defense recognizing that the amendment was proper. We didn't, by raising it in an affirmative defense, we're not saying we expect it to be challenged. And the other so-called piece of extrinsic evidence, which is the letter arising out of the mediation. For the first time in this case, in their reply brief, the plaintiffs pointed out that that letter came out of the mediation. All the previous times they used it, they just cited the letter. Use of that letter is a direct violation of Local Rule 33, which bars communications in mediation conferences or in connection with the mediation process. And it says, They may not be disclosed or otherwise used by any mediation participant except as agreed in advance by all participants. That's Local Rule 33B4D. So that really shouldn't even be considered by the court. But even if it were, there's nothing in what they presented that says, We have a separate claim in this case that was in the 2007 complaint that relates to the cutback claim in the 2004 amendment. Going on. And Bledsoe is a very different case. In the Bledsoe case, what you had was a key TAM case, a False Claims Act case, where the plaintiff presented a broad complaint, unlike the complaint here saying there are a number of bad acts that the company engaged in. And this is the complaint that gets filed with the government under seal in a key TAM case. Consistent with the key TAM act, they submitted along with their complaint their disclosure statement, which had the detailed facts which supported the various elements  The court found, and I think Judge Clay, as I recall, you wrote the decision in this case, that the fact that they told the government at the time they filed this, well within the statute of limitations, that of the details behind the broad challenges in their complaint, in effect provided the government the notice they needed and that therefore relation back was appropriate under those circumstances. We have nothing like that here. There's no statement at the time of the 2007 complaint that says anything about the 2004 amendment being at issue. The only statement we have that's close to contemporaneous says it is not within the ambit of the complaint. So that case is completely inapt here and doesn't apply. As I mentioned, the whipsaw claim in the 2007 complaint involves different time periods, different class members. One of the elements that's important for an American pipe tolling situation is that the defendant is put on notice as to who's in the class. And so the absent class members are as well. A whipsaw claim, again, only affects those people who take these pre-retirement lump sum distributions. It doesn't affect everybody who's affected by the 2004 amendment, which is everybody who was in the plan from 2004 forward. The time of the whipsaw claim ended in 2006. The cutback claim goes all the way to the present. Anybody who's in the plan now conceivably could have a claim there. We talked about the different and peripheral claims. The other aspect that's important about American pipe is in addition to it not allowing tolling of claims that weren't brought, it only allows tolling, and this is the term, these are the words of the Supreme Court in American pipe, it only allows tolling as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action. The Supreme Court could have stopped and said there's tolling for all asserted members of the class, but it went further, and it said all asserted members of the class who would have been parties had the suit been permitted to continue as a class action. And what that means is you don't just, just because the plaintiffs name everybody doesn't mean they all get the benefit of tolling. You have to look at the complaint as a whole, look at the claims, see what fair notice is given. And in this situation, first of all, Mr. Tedesco wouldn't have even been in the class. The only thing that was discussed in that case was lump sum distributions. As I mentioned before, he didn't have one, he'll never have one, he'll never have a whipsaw claim because of the Pension Protection Act. And by the way, the affirmative defense that they rely upon couldn't have affected Mr. Tedesco because that affirmative defense, by its terms, only went to the whipsaw claim. And again, Mr. Tedesco never had a whipsaw claim. So Mr. Tedesco never should have been in this case in the first place and is definitely out under any circumstances. On 15C, the plaintiff talks about surprise being the standard. That's not the standard. Under the Asher v. Unarco case, for example, there was no surprise and no prejudice, but this court held that 15C relation back didn't apply to new plaintiffs. In that case, you had one incident, some people filed within the time of the statute of limitations, some other people filed later. The court wouldn't allow relation back, even though there was no surprise at all to the defendants because it's the same incident, they were preserving the same evidence, whatever. So prejudice is not – well, there has to be no surprise and notice and no prejudice, that's not the standard. The standard is at the same transaction or occurrence, which it wasn't there and it's not here. Like Asher, the named plaintiffs here are the only plaintiffs in a class action. The named plaintiffs are the only plaintiffs. The unnamed plaintiffs are treated for certain purposes, like they're in the case, such as for tolling under American pipe, under the strictures of American pipe with the limits of crown court. But they're not treated as plaintiffs for all purposes. For example, plaintiffs in a class action, if a named plaintiff is dismissed in a class action, the unnamed class members have – there's no claim preclusion or issue preclusion with regard to them. They can go out and file their own cases. There's no res judicata effect on them. So it's clear that just because you're asserted to be in a class, in a broad class definition, that doesn't mean you're a plaintiff for all purposes. I see my time is up. And just to finish up in summary, one, Weston controls here. Unnamed class members can't get the benefit of tolling as to claims that weren't asserted. Two, there's absolutely no fair notice to the defendants here or to the unnamed class members of that cutback claim in the 2007 complaint. Three, Mr. Tedesco has no basis whatsoever to be in this case because he wasn't even really in the class in the first case other than in the broad class definition. But if you look at the complaint as a whole, it certainly didn't cover him because he had none, no lump sum distribution, and will not have one. And fourth, which I'll stand on the briefs on, Mr. Wharton, who has a whipsaw claim, which we do not challenge on statute of limitations grounds, was properly dismissed by the court. And, in fact, he's waived his right to challenge that by not raising on the merits dismissal that the court below entered into on his whipsaw claim. They did not raise that in their briefs, which under clear Sixth Circuit law is a waiver. We will stand on our briefs as to the other points at issue and request that the court affirm the district court rulings. Thank you, Your Honor. Thank you. Is there a rebuttal? Thank you, Your Honor. It is telling that counsel started and ended with the Weston case. The Weston case on page 17 of our reply brief is completely inapposite. The plaintiff in that case filed an untimely original complaint. They agree that Ms. Duran's complaint in 2007 was timely. It's all smoke and mirrors. Weston is completely irrelevant. They attempt also to say that Ms. Duran didn't have standing. The Gooch case that Judge Marbley, you sat on the panel that decided, of course somebody has standing when they personally have the injury. It's just the phallic principle. That decision and the Gooch case both make clear they might have a Rule 23 objection to Ms. Duran raising the specific 2004 amendment claim, but that's a Rule 23, not a standing problem. It's the same injury, and, in fact, that's why we added Wharton and Tedesco to make sure once we saw that affirmative defense that there were no class certification issues, so there were subclass representatives. Third, and we're still on American Pipe, which, remember, when I stood up originally, I said, we think it's a classic American Pipe case, but we think it's easier to decide it under Rule 15. But on American Pipe, he says three times, Tedesco's not in the class, but then he says, oh, only in the broad sense that he's literally in the class. He's alleged everybody, including Tedesco, is alleged who got a cash balance accrual to have been shortchanged by having this swap happen. He says it's a whipsaw claim. We don't use the word whipsaw in the complaint, and he says that Tedesco should not be in the case. Well, that's wrong because if we prevail, then Tedesco, who is going to take, like 90% of the people, a lump sum or an annuity, his benefit will be shortchanged. I don't know why he keeps saying Tedesco's not in the case. This issue is simple. If you go to a bank and you buy a bond or a CD, the bank cannot later change the formula of issuance. You bought the CD. They can't later say, well, we don't want to pay that rate of interest later on. It's not like a savings account where they can change the rate. This lawsuit has always been about one thing, the definition and calculation of the accrued benefit under the plan. Is a savings account, in your example, the same as a bond or a T-bill? Well, it's not. In my example, a savings account is just like a 401K plan where you put your money in, and what you see is what you get at any moment. My question is much simpler than that, and I'll repeat it. Is a savings account, in your example, the same as a bond or a T-bill? No. Okay. But then why are these two the same? Because both the savings account and a bond or a T-bill are saving mechanisms. They have different calculation methodologies, but they're not the same. Isn't this what we have here? We have a whipsaw claim that's one thing, a cutback claim that's another. They both are calculation methodologies, but they're not the same thing. Well, they are the same thing because ERISA says so. Just indulge me for a second. Your account is not your benefit. If there's a $1,000 contribution to your account, your benefit is not $1,000. Your benefit is $1,000 at any moment, and the Thornton case that this court also decided recently and deals with this, it is the current contribution projected forward with interest credits. So the bond example is when you get a bond, you purchase the bond, and you have a rate formula that is in effect throughout the life of the bond. So it's not just the face value of the bond that you owe, but it's the future interest. A savings account is different. In this case, we raised, for Rule 15 purposes, they made the allegation that the Asher case controls here. They're wrong because he left out that the Asher case says a new party doesn't get relation back, but it says specifically that doesn't apply when it's a class allegation. This is a class allegation, and there is no surprise. Defendants are supposed to read the complaints that they receive. They got this complaint. They didn't move to strike the class allegations as discordant. Let me ask you this, and maybe this can simplify it, at least for me. If we fix, if the court fixed the challenge to the 30-year treasury rate in the Whipsaw claim. Fix it? Yeah, we fix it because it was said that that rate was not the rate that was applied to the ongoing allocation of interest credit to our account. If we fix that, if the court fixed it, if they fixed it, whatever you were alleging in the underlying, if we fixed that rate, or maybe fixed it a little bit, if we remedied it, does that remedy also remedy what was alleged in the cutback? Exactly. It does. The amendment is a nullity because of the same reason why Ms. Durand has a Whipsaw claim, because it's part of your accrued benefit. You can't take it away whether you do it in an estimation methodology or you pass an amendment. It's as important to your accrued benefit as the underlying contribution. It is part of the accrued benefit. West v. AK Steele, they don't dispute. They just say they have the right to lower it, but we already earned the right to the higher rate. They can't take it back. It's just two ways of doing the same illegal thing. They had notice of that in 2007. All right. I see that you're well out of time, so thank you for your arguments, and the case is submitted.